FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

AUG 3 0 2005

Stephan Harris, Clerk
Casper

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

EASTMAN, et al.,          )
                           )
      Plaintiff(s),         )
                           )      Case No. 03-CV-185-D
vs.                         )      Consolidated with
                           )      Case No. 04-CV-310-D
UNION PACIFIC RAILROAD, et al.,   )
                           )
      Defendant(s).        )

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Defendants Renzenberger, Inc., Milton W. Marshall, and Union Pacific Railroad Company's ("UPRR") Motion for Summary Judgment and Defendants Ellie Taylor, Radel Frye, and Wanda Frye's Motion for Summary Judgment Against Wayne D. Gardner. The Court, having carefully considered the motions, having heard oral argument, and being otherwise fully advised, FINDS and ORDERS as follows:

### BACKGROUND

The instant personal injury action was filed by Wayne D. Gardner along with James Eastman on September 9, 2003. On May 14, 2004, Plaintiff Gardner, and his wife Jenny, filed a voluntary Chapter 7 bankruptcy petition, schedules, and statements of financial affairs in United States Bankruptcy Court. Under penalty of perjury, the Gardners affirmed that they had read the petition, schedules, and statement of financial affairs and that the information contained in the

documents was true and correct.  The Gardners made no mention anywhere in the petition,

schedules, or statement of financial affairs to the personal injury action.  When asked specifically

in the statement of financial affairs to list all suits and administrative proceedings to which they

were parties, the Gardners listed two collection actions, but not the present action.

On June, 25, 2004, a meeting of creditors was held.  The Gardners took an oath at the

beginning of the proceedings.  They were subsequently asked by the Bankruptcy Trustee, "Do

either one of you have a personal injury suit pending?," to which Mr. Gardner replied, "No."

[Transcript of 341 Meeting of Creditors, at 7.]  Then the following exchange took place, in which

Mr. Gardner's bankruptcy attorney, David Arnold, participated,

| | |
|---|---|
| Trustee: | You've been in an accident and – or anything like that? |
| Mr. Gardner: | Yeah. I was in an accident – |
| Mr. Arnold: | It's on work. |
| Mr. Gardner: | – on work. |
| Trustee: | Okay. So, it'd be workers' comp. |
| Mr. Arnold: | And it's – it's – it's not worker's comp. per se because it's on the railroad, and they have – |
| Trustee: | Oh. |
| Mr. Arnold: | – a different – |
| Trustee: | So they have their own little world, yeah. |
| Mr. Arnold: | Yes, yes. Those are – |
| | (Laughter) |
| Mrs. Gardner: | Thank you. |
| Mr. Gardner: | That's what someone would say. |
| Mr. Arnold: | They know exactly what you mean when you say "their own little world" because it's a real mess. |
| Trustee: | Okay. |
| Mr. Arnold: | They're not – they're not getting him any hearing aids until the whole thing is all completely done. I mean, they won't do medical things for him in the meantime. |

Trustee:        So you just continue to hang out there, huh?
Mr. Arnold:     Horrible, yeah.  I mean, it's --
Mr. Gardner:    It's --
Mr. Arnold:     -- really bad.
Mr. Gardner:    Yeah.

[*Id.* at 7-8.]  Meanwhile, Mr. Gardner's personal injury lawsuit against, Union Pacific Railroad, Renzenberger, Inc., Milton Marshall, Ellie Taylor, Radel and Wanda Frye, Oleg Pekun, MJ Transportation, and Macy's Truck Repair, in which millions in damages were claimed, had been pending for almost a year.

In recent depositions, both Wayne and Jenny Gardner were questioned by Defendants about their intentions in not disclosing the lawsuit to the Bankruptcy Court.  Jenny Gardner, who had filed for bankruptcy on her own 10 years perviously, testified that she knew it was important to be honest with the Bankruptcy Court.  [Dep. of Jenny Gardner, at 6-7, 9-10.]  She testified that she knew of the personal injury lawsuit during the pendency of the bankruptcy, but did nothing to disclose it.  [*Id.* at 7-9, 17, 20-21, 27.]  She also admitted to having benefitted by having her debts wiped out and testified that she had no intention of contacting the bankruptcy trustee if the mediation in the personal injury case had been successful.  [*Id.* at 14, 28, 38.]  Wayne Gardner testified in essentially the same manner as Jenny.  Though unfamiliar with the intricacies of bankruptcy, Mr. Gardner understood that all his debts were wiped out by the bankruptcy.  [Dep. of Wayne Gardner, at 37-38.]  He knew of the personal injury lawsuit and did not disclose it to the Bankruptcy Court.  [*Id.* at 27-28, 31-32, 34.]

On August 25, 2004, the bankruptcy was discharged as a no asset bankruptcy. On June 30, 2005, Richard Crow, Mr. Gardner's attorney in the personal injury lawsuit, discovered the bankruptcy purely by accident. Mr. Crow did not disclose the bankruptcy to defense counsel at the time, but chose to wait until he had spoken with local counsel, which he was able to do on July 12, 2005. On July 13, 2005, Mr. Gardner's attorneys filed a motion to reopen the bankruptcy. The bankruptcy was reopened and the bankruptcy trustee was reappointed. Trial in Mr. Gardner's personal injury case was scheduled to begin on August 1, 2005.

At the Court's hearing on motions in limine on July 20, 2005, defense counsel and the Court were informed for the first time of Mr. Gardner's bankruptcy by Mr. Sullivan, local counsel for Mr. Gardner. The hearing was adjourned due to concerns about whether the Court continued to have jurisdiction of the case. Later, the Court determined it did have jurisdiction and asked the parties to brief the judicial estoppel issues for the Court. Defendants Ellie Taylor and Radel and Wanda Frye moved for summary judgment based on judicial estoppel, as did Defendants Renzenberger, Inc., Milton W. Marshall, and UPRR. On July 28, the court granted various motions to continue and moved the trial to January 23, 2006. Plaintiff was given until August 4, 2005 to respond to the motions for summary judgment. Plaintiff Gardner filed a response, which was stricken for failure to comply with the 15-page limit. An amended response was filed by Mr. Gardner on August 9, 2005. Reply briefs were filed on August 10, 2005. Finally, on August 19, 2005, the Bankruptcy Trustee, the real party-in-interest, responded to the

motions. The Court considers the two motions for summary judgment, the response of the

Trustee, and the two reply briefs in deciding these motions.[1]

---

[1] The Court has determined that it cannot consider the response filed by Mr. Gardner, as he was not a party to the suit when the response was filed. Nevertheless, the Court will not deem the motion confessed for failure to respond. Defendants have asked the Court to deem their motion for summary judgment confessed pursuant to U.S.D.C.L.R. 7.1(b)(2)(A) for the failure of the Trustee to timely respond. Local rule 7.1(b)(2)(A) provides, "Failure of a responding party to serve a response within the ten (10) day time limit may be deemed by the Court in its discretion as a confession of the motion." U.S.D.C.L.R. 7.1(b)(2)(A). The Court cannot, however, grant a motion for summary judgment without having first considered whether the moving party has met its initial burden of production under Federal Rule of Civil Procedure 56(c). *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002). In addressing this exact issue in *Reed v. Bennett* in relation to Kansas' local rule that permits a court to deem confessed a motion to which there has been no response, the Tenth Circuit held,

> To summarize, a party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is "appropriate" under Rule 56. Summary judgment is appropriate only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion. The court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment.

*Id.* (citing *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir.2001); *Anchorage Assoc. v. Virgin Islands Board of Tax Review*, 922 F.2d 168, 175-76 (3d Cir.1990); *Livernois v. Medical Disposables, Inc.*, 837 F.2d 1018, 1022 (11th Cir.1988)). Therefore, this Court must consider whether Defendants have met their burden of proof, even if the Trustee had failed to respond at all. As there are no disputed issues of fact, the Court determines as a matter of law whether judicial estoppel should be applied. As for Defendants' motion to strike the belated response of the Trustee, the Court declines to do so in its discretion, and will consider the response in deciding the issues presented.

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. PRO. 56(c). "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citing FED. R. CIV. FRO. 56(e)). In considering a party's motion for summary judgment, the court must examine all evidence in the light most favorable to the non-moving party. *Barber v. General Elec. Co.*, 648 F.2d 1272, 1276 n.1 (10th Cir. 1981).

## DISCUSSION

### *Choice of law*

Before the Court can consider whether Mr. Gardner should be estopped from pursuing his personal injury claim, a threshold decision must be made: Should the Court apply state or federal law to the judicial estoppel issue? There are two lines of cases on judicial estoppel in the Tenth Circuit. In one line, the Court of Appeals has applied state estoppel principles when sitting in

diversity. In the other line, the court historically rejected the doctrine of judicial estoppel altogether and only recently adopted the doctrine when the United States Supreme Court recognized its validity.

Historically, the Tenth Circuit only recognized the doctrine of judicial estoppel in diversity cases when following state law. *Reno v. Beckett*, 55 F.2d 757, 770 (10th Cir. 1977) (applying Kansas law and determining that appellee was not estopped from arguing the validity of the contract in the case before the court when appellee had urged the invalidity of the contract in another case); *Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River*, 874 F.2d 1346, 1363-64 (10th Cir. 1989) (holding that judicial estoppel in a diversity case is determined by state law); *Lane v. Wal-Mart,Inc.*, 172 F.3d 879, 1999 WL 51808, *6 n.2 (10th Cir. 1999) (unpublished) (acknowledging the split in circuits and holding that the Tenth Circuit applies state law to issues of judicial estoppel in a diversity action).

In the other line of cases in which the Tenth Circuit rejected the doctrine of judicial estoppel, the court had jurisdiction because of a federal question in each case. *In re BCD Corp.*, 119 F.3d 852, 858 (10th Cir. 1997) (noting in an appeal of a sale in bankruptcy that the Tenth Circuit has rejected the doctrine of judicial estoppel as being inconsistent with the spirit of the Federal Rules of Civil Procedure); *U.S. v. 49.01 Acres of Land, More or Less, Situate in Osage County*, 802 F.2d 387, 390 (10th Cir. 1986) (holding the same in a takings case); *United States v. 162 MegaMania Gambling Devices*, 231 F.3d 713, (10th Cir. 2000) (holding the same in an

-7-

action by the United States seeking forfeiture of electronic bingo machines).  After the United

State Supreme Court's decision in *New Hampshire v. Maine*, however, in which the Supreme

Court adopted the doctrine of judicial estoppel, the Tenth Circuit acknowledged the validity of

the doctrine in a case involving a federal question as well as supplemental state law claims.

*Johnson v. Lindon City Corporation*, 405 F.3d 1065, 1069 (10th Cir. 2005) (citing *New*

*Hampshire v. Maine*, 532 U.S. 742, 750 (2001)).  In *Johnson*, the plaintiffs had filed suit for

unlawful arrest and imprisonment in violation of 42 U.S.C. § 1983, as well as claims of false

arrest and imprisonment under state law and state law claims for the torts of intentional infliction

of emotional distress and negligent infliction of emotional distress.  *Id.* at 1067.  Applying the

doctrine of judicial estoppel to the federal claims, the Tenth Circuit followed the analysis set

forth by the Supreme Court in *New Hampshire* to determine that judicial estoppel should be

applied to plaintiffs' argument that there was no probable cause to arrest them.  *Id.* at 1069.

  In the Tenth Circuit, therefore, when a district court is sitting in diversity, it should apply

state law to determine whether judicial estoppel applies.  When the case is presented on a federal

question, the federal doctrine as adopted by the Tenth Circuit in *Johnson* applies.  In this case,

the FELA claims against UPRR, and Renzenberger, Inc. and Milton Marshall as UPRR's agents,

are brought pursuant to federal law.  The Court has supplemental jurisdiction over the negligence

claims against the other Defendants.  Clearly, the Court should apply the federal judicial estoppel

doctrine to the claims under FELA against UPRR, Renzenberger, and Marshall.  *See Johnson*,

405 F.3d at 1067, 1069 (applying the federal doctrine to the federal question even when supplemental state law claims were also brought by the plaintiff). Whether to apply federal or state law to the supplemental state law claims is a closer issue, but as a matter of policy and practice, the Court determines that the federal doctrine should be applied.

As a practical matter, the application of two different theories of judicial estoppel in a case in which a federal question and state law claims coexist would be unworkable and lead to inconsistent results. Though the different theories would most often produce the same result if the conduct of the estopped party was egregious, there would undoubtedly be occasions in which the two versions of judicial estoppel would yield different results. For example, where the federal doctrine generally requires an element of intent, *see In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999) (noting exception for inadvertence), in Wyoming, judicial estoppel is invoked for the assertion of inconsistent positions, regardless of intent, *see Zwemer v. Production Credit Association of Midlands*, 792 P.2d 245 (Wyo. 1990). If two different doctrines were employed, some claims might be estopped, while others might not, even though the conduct of the estopped party was identical with regard to both claims. Such a result would render the supposedly "equitable" doctrine of judicial estoppel inequitable and unjust.

Moreover, the policy driving the doctrine of judicial estoppel counsels toward the application of a uniform result for all claims and parties in a particular case. The purpose of the doctrine of judicial estoppel is to "prevent improper use of judicial machinery." *Johnson*, 405

F.3d at 1068 (citation and quotations omitted). The purpose is not to protect the party arguing for

estoppel. That is why, for instance, the application of judicial estoppel does not require that the

moving-party have detrimentally relied upon the earlier inconsistent position. *In re Coastal*

*Plains, Inc.*, 179 F.3d at 210 (5th Cir. 1999); *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282,

1286 (11th Cir. 2002). The doctrine is meant solely to prevent parties from playing "fast and

loose" with the courts by asserting one position in one case, and the opposite position in another.

*See Ryan Operations v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996).

Therefore, with protection of the integrity of the judicial machinery as the ultimate goal, it makes

little sense to employ a state law doctrine to supplemental claims when the federal doctrine,

which must be applied to the federal claim in the same case, is designed to prevent abuse of the

courts.

Therefore, the Court will apply the federal doctrine of judicial estoppel with regard to

both the federal and supplemental state law claims in this action to obtain a result that is both

workable and just.

## *The Federal Judicial Estoppel Doctrine*

As the United States Supreme Court noted, though the doctrine of judicial estoppel is

"probably not reducible to any general formulation of principle," three factors have typically been

considered in determining whether to apply the doctrine. *New Hampshire*, 532 U.S. at 750

(citation omitted). Those three factors were recently rearticulated by the Tenth Circuit in

*Johnson. Johnson*, 405 F.3d at 1069 (quoting *New Hampshire*, 532 U.S. at 750).

> First, a party's later position must be 'clearly inconsistent' with its earlier position. Second, [the party must have] succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create 'the perception that either the first or the second court was misled.' The requirement that a previous court has accepted the prior inconsistent factual position, ensures that judicial estoppel is applied in the narrowest of circumstances. Third, [] a party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (quoting *New Hampshire*, 532 U.S. at 750-51).

    1.    Clearly Inconsistent Positions

The first issue, therefore, is whether Mr. Gardner took a position "clearly inconsistent" in the personal injury action with the position he took in his bankruptcy. A petitioner in bankruptcy is required to file along with the petition, a schedule of assets and statement of financial affairs. The petitioner has a duty to disclose all assets, including contingent and unliquidated claims. 11 U.S.C. § 521(1).

> The duty to disclose in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action. The debtor need not know all the facts or even the legal basis for the cause of action; rather, if the debtor has enough information . . . prior to confirmation to suggest that it may have a possible cause of action, then that is a "known" cause of action such that it must be disclosed. Any claim with potential must be disclosed, even if it is contingent, dependent, or conditional.

*In re Coastal Plains, Inc.*, 179 F.3d at 208 (quoting *Youngblood Group v. Lufkin Fed. Sav. & Loan Ass'n*, 932 F. Supp. 859, 867 (E.D. Tex. 1996)). The statement of financial affairs in this

-11-

case, specifically asked Mr. Gardner to "list all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy." In response to this request, Mr. Gardner listed two collection proceedings, but did not list his personal injury lawsuit. Nor was the lawsuit disclosed in any of the other filings with the Bankruptcy Court. On paper at least, Mr. Gardner took the position in the bankruptcy that he had no personal injury claim. In the instant action, he takes the "clearly inconsistent" position that he has a personal injury claim.

The question remains, however, whether Mr. Gardner disclosed the existence of the personal injury action at the meeting of the creditors. In response to the direct question, "Do either one of you have a personal injury suit pending?," Mr. Gardner replied, "No." In response to the follow up question, "You've been in an accident and – or anything like that?," Mr. Gardner admitted, "Yeah. I was in an accident –" Mr. Gardner's attorney took over from there stating, "It's on work." When the Trustee assumed, "So, it'd be worker's comp," the attorney responded ambiguously, "[I]t's not worker's comp *per se* because it's on the railroad . . . ." [Transcript of 341 Meeting of Creditors, at 7 (emphasis added).] The attorney went on to explain that it was a real mess and that "they're not getting him any hearing aids until the whole thing is all completely done." No mention was made during the meeting of creditors or at any other time, that Mr. Gardner had sued UPRR as well as Renzenberger, Inc., Milton Marshall, Ellie Taylor, Radel and Wanda Frye, Macy's Truck Repair, Oleg Pekun, and MJ Transportation.

The disclosures at the meeting of the creditors were insufficient to inform the Trustee or the Bankruptcy Court of the pending lawsuit. Though Mr. Gardner and his attorney may not have been intentionally deceptive, their explanation of the pending action left the Trustee with the wrong impression. She certainly would not have concluded from the exchange that Mr. Gardner had a multi-million dollar personal injury action pending before the district court and against the railroad as well as several other defendants. In fact, Mr. Gardner expressly denied having a personal injury lawsuit pending, and his attorney's mention that UPRR would not supply him hearing aids, gave the impression that the claims of Mr. Gardner, if any, were trivial and limited to the railroad. Indeed, the Trustee very shortly thereafter declared the bankruptcy a "no asset" bankruptcy. The fact that Mr. Gardner's attorney ambiguously stated that the claims were not worker's compensation *per se* does not assist Mr. Gardner. Never did Mr. Gardner make clear to the Bankruptcy Court or the Trustee that he had a personal injury lawsuit pending in this Court. By bringing up the accident and failing to disclose the nature of the lawsuit relating to the accident, Mr. Gardner and his attorney, whether intentionally or not, misled the Trustee and the Bankruptcy Court

2.    Judicial Acceptance of the Inconsistent Position

In this case, Mr. Gardner clearly persuaded the Bankruptcy Court to accept that he had no personal injury claim because the bankruptcy was discharged as a "no asset" bankruptcy.

-13-

3.    Unfair Advantage *or* Unfair Detriment

Finally, the Court considers whether Mr. Gardner "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Johnson*, 405 F.3d at 1069. In its discussion of this factor in *Johnson*, the Tenth Circuit noted that the plaintiffs had received a "substantial benefit" in entering Pleas in Abeyance, because in exchange for the pleas the state had dismissed the assault charges. *Id.* The Tenth Circuit found that for the plaintiffs to then claim that there was no probable cause to arrest them was "nothing more than an intentional attempt to mislead the [federal courts] to gain unfair advantage in this action." *Id.*

While Mr. Gardner probably did not intentionally attempt to mislead the Court, he certainly received a substantial benefit by failing to disclose the personal injury lawsuit in his bankruptcy. His debts were discharged and any judgment he might have received in this case would have been entirely his own. As for whether Defendants would sustain an unfair detriment by the inconsistent position, it is hard to imagine how these Defendants would. Defendants had nothing to do with the bankruptcy and were not affected by Mr. Gardner's position before the Bankruptcy Court. Nevertheless, the Court finds, after reviewing the factors articulated by the Tenth Circuit, that judicial estoppel is appropriate in this case. Mr. Gardner took an inconsistent position before the Bankruptcy Court. He convinced the Bankruptcy Court to rely on his inconsistent position. And he gained an unfair advantage, or substantial benefit, by obtaining the discharge of his debts in a "no asset" bankruptcy.

## Exception for Inadvertence

The Supreme Court has recognized that "it may be appropriate to resist application of judicial estoppel 'when a party's prior position was based on inadvertence or mistake.'" *New Hampshire*, 532 U.S. at 753 (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)). The Fifth Circuit, in a widely accepted application of the judicial estoppel doctrine in *In Re Coastal Plains, Inc.*, described a debtor's failure to disclose a lawsuit during a bankruptcy proceeding as "inadvertent" only when, "the debtor either lacks knowledge of the undisclosed claims *or* has no motive for their concealment." 179 F.3d at 210. In this case, Mr. Gardner certainly knew that he had a personal injury lawsuit pending during the bankruptcy. Therefore, the only way he can avoid estoppel by claiming an inadvertent failure to disclose is to show he had no motive for concealment.

Courts have considered various facts to determine either that a debtor had a motive to conceal or did not. For example, the Eleventh Circuit in *Barger v. City of Cartersville, Georgia*, in determining that the plaintiff did have a motive for concealment and should be estopped, noted that not only did the plaintiff reap the benefit of keeping any proceeds from her claim, when asked by the bankruptcy trustee about the monetary value of the claim, she informed the trustee that she only sought reinstatement, not damages. 348 F.3d 1289, 1298 (11th Cir. 2003). In fact, the plaintiff had amended her prayer for relief to include damages only two days before the creditors meeting. *Id.* Furthermore, the plaintiff had only sought to reopen the bankruptcy after

-15-

the defendants had moved the district court to enter summary judgment on judicial estoppel
grounds. *Id.* at 1297.

In *Eubanks v. CBSK Fianacial Group, Inc.*, the Sixth Circuit considered the fact that the
plaintiffs had disclosed the claim to the bankruptcy trustee in deciding not to apply judicial
estoppel. 385 F.3d 894, 898-99 (6th Cir. 2004). The plaintiffs had sent documentation to the
trustee of the claim, contacted the trustee several time over the next several months to inquire as
to whether the trustee would pursue the claim, and attempted to amend the bankruptcy schedules
to include the claim. *Id.* The court noted that all parties were on notice of the plaintiffs' desire to
pursue the claim because they had filed motions with the court, requested status conferences, and
corresponded with the trustee. *Id.* at 899.

The United States Bankruptcy Court for the Southern District of Mississippi in *Waddell v.
Wamstad*, in determining not to apply judicial estoppel, found dispositive the fact that the
attorney for the plaintiff had inquired with the bankruptcy attorney about amending the schedules
in bankruptcy, as well as the fact that the lawsuit was widely publicized and that the debt in
bankruptcy was minimal compared to the millions the plaintiff might have received in the
lawsuit. 314 B.R. 328, 338 (Bankr. S.D. Miss. 2004).

The Court finds in this case that Mr. Gardner had a motive to conceal his personal injury
claim from the Bankruptcy Court and that his failure to disclose was not inadvertent. Of course,
Mr. Gardner had the obvious motive that if he did not disclose the personal injury suit in the

-16-

bankruptcy, he would be able to claim any recovery for himself. What the Court finds most

telling, however, is the fact that when given the opportunity at the meeting of the creditors to

reveal the pending litigation, Mr. Gardner did not disclose his personal injury action. First, he

explicitly denied having a personal injury action pending. Second, his attorney represented that

the claim was not worker's compensation "per se," but indicated that any claim was related to an

on-the-job injury, leading the Trustee to believe that the claim was similar in nature to a worker's

compensation claim. Third, Mr. Gardner's attorney referred to UPRR's failure to provide

hearing aids to Mr. Gardner, misrepresenting the extent of the claims involved. Mr. Gardner had

an affirmative duty to speak up and let the trustee know the nature of his lawsuit against UPRR

as well as eight other defendants. Neither did Mr. Gardner disclose the lawsuit in his statement

of financial affairs, which specifically asked for a listing of claims.

     This was not a case like *Eubanks* in which the debtor sent documentation of the claim to

the trustee, inquired repeatedly about the prosecution of the claim, and attempted to amend the

bankruptcy schedules. *Eubanks*, 385 F.3d at 898-99. Nor is it a case like *Waddell*, in which the

case was widely publicized and the debtor inquired about amending the schedules. *Waddell*, 314

B.R. at 338. This case is most similar to *Barger*, in which the debtor, faced with a direct

question as to the monetary value of her claims, misrepresented their worth. *Barger*, 348 F.3d at

1298.

     The Court does not find that Mr. Gardner or his attorney in bankruptcy intentionally lied

-17-

in an attempt to conceal assets from the Bankruptcy Court. The Court cannot, however, take the benign view that the failure to disclose was inadvertent. If the only defendant in the personal injury action had been Mr. Gardner's employer, UPRR, the Court might have been swayed that Mr. Gardner attempted to disclose his lawsuit. Certainly, there was discussion in the meeting of creditors of a work related injury. As it stands, however, no reference was ever made, however slight, to the eight other defendants involved in the personal injury action, six of whom are not even tangentially related to UPRR. The Bankruptcy Court was misled, and it is incumbent upon this Court to protect the integrity of the judicial process. Given the utmost importance of the duty to disclose assets in bankruptcy, the Court cannot permit a failure to disclose to escape unsanctioned. The Court holds, as a matter of law, that judicial estoppel should be applied and Mr. Gardner and the Bankrutpcy Trustee are estopped from pursuing Mr. Gardner's personal injury claims before this Court.

The Court finds the result in this case utterly detestable. It has always been this Court's desire to assure that every case is decided on its merits, for good or ill. The Court cannot, however, turn a blind eye to the conduct of Mr. Gardner in this case. The bottom line is that if judicial estoppel does not apply to the facts of this case, the Court cannot envision a circumstance in which it would apply in the Tenth Circuit. THEREFORE, after considering the factors and finding that Mr. Gardner's failure to disclose was not inadvertent, it is hereby

**ORDERED** that  Defendants Renzenberger, Inc., Milton W. Marshall, and Union Pacific Railroad Company's Motion for Summary Judgment and Defendants Ellie Taylor, Radel Frye, and Wanda Frye's Motion for Summary Judgment Against Wayne D. Gardner are **GRANTED**. Mr. Gardner's claims against all Defendants are hereby **DISMISSED** with prejudice.

It is hereby further **ORDERED** that Defendants Renzenberger, Inc., Milton W. Marshall, and Union Pacific Railroad Company's Motion to Deem Motion for Summary Judgment Confessed, Defendants Ellie Taylor, Radel Frye, and Wanda Frye's Motion to Deem Motion for Summary Judgment Confessed, and Defendants Renzenberger, Inc., Milton W. Marshall, and Union Pacific Railroad Company's Motion to Strike the Trustee's Response are **DENIED**.

DATED this _30th_ day of August, 2005.

United States District Judge

-19-